Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Julian P. Vasek, Esq.
Texas Bar No. 24070790
Fareed Kaisani, Esq.
Texas Bar No. 24104017
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § § § § | Chapter 7 |
| WALNUT HILL PHYSICIANS HOSPITAL, LLC, | | Case No. 17-32255-bjh-7 |
| Debtor. | | |
| SCOTT M. SEIDEL, TRUSTEE, | § § § § § § § § § § § § | |
| Plaintiff, | | |
| | | Adv. Proc. No. 18-3219-bjh |
| v. | | |
| HC-7502 GREENVILLE AVENUE, LLC, and CAPITAL ONE, N.A., | | |
| Defendants. | | |

**OBJECTION TO MOTION TO DISMISS AND BRIEF IN SUPPORT**

TO THE HONORABLE BARBARA J. HOUSER, CHIEF U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel, the duly-appointed chapter 7 trustee (the "Trustee") for the estate (the "Estate") of Walnut Hill Physicians Hospital, LLC (the "Debtor"), the debtor in the above styled and numbered Chapter 7 bankruptcy case (the "Bankruptcy Case"), and files his *Objection and Brief In Support* (the "Objection"), objecting to the *Motion to Dismiss* (the

"Motion") filed by HC-7502 Greenville Avenue, LLC (the "Landlord"), respectfully stating as follows:

## I.   SUMMARY

1. No statute of limitations applies to bar the Trustee's asserted claims because the Debtor's payment obligations under the Lease did not arise when the Lease (defined below) was executed, nor is the Trustee seeking to avoid any obligation in the *original* Lease. Rather, the obligation the Trustee seeks to avoid, and pursuant to which all payments were made, is contained in the *Second Amendment* (defined below), which was executed and delivered within TUFTA's four (4) year period. With respect to the balance of the Motion and the governing pleading standards, the Landlord's arguments are without merit. The Trustee has not asserted an actual fraudulent transfer claim, and the Landlord confuses the Trustee *pleading* his case with the Trustee *proving* his case, which is not the purpose of a complaint. The Court should therefore deny the Motion in full or, with respect to any issue of deficient pleading, the Court should grant the Trustee leave to amend his Complaint to rectify any such issue.

## II.   EVIDENCE

2. While the consideration of evidence is improper under Rule 12(b)(6), the consideration of written instruments referenced in the complaint and attached to the motion to dismiss, and which are central to the plaintiff's claims, may be considered. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Here, the Landlord has oddly failed to attach the operative documents to its Motion, even though the Trustee referenced those documents and discussed what those documents stated. *Complaint* at ¶¶ 13-14. Fortunately, however, those documents are attached to the Landlord's proof of claim, of which this Court can take judicial notice, *see* Claim No. 249, and which are attached hereto for ease of reference.

Specifically, attached hereto as Exhibit "A" is that certain *Lease Agreement* (the "Lease"), by and between the Debtor and the Landlord's predecessor, and attached hereto as Exhibit "B" is that certain *Second Amendment to Lease Agreement* (the "Second Amendment").

### III.    LIMITATIONS DOES NOT APPLY

3.    The Trustee has not sued to recover on an actual fraudulent transfer theory. The Landlord's arguments with respect to the same are not ripe. The Trustee reserves his right, depending on discovery, to assert such a claim in the future, and the Court can and should consider any limitations issue regarding actual fraudulent transfer only if and when that happens.

4.    With respect to constructive fraudulent transfer under TUFTA, the Landlord's argument is simple—the Lease was signed on August 21, 2012, and that it is this date that counts for limitations periods. The Landlord ignores the Trustee's arguments and the language of the Lease, as well as the fact of the Second Amendment.

5.    The applicable statute provides that an obligation arises, "if evidenced by a writing, when the writing executed by the obligor is delivered to or for the benefit of the obligee." TEX. BUS. & COMM. CODE ANN. § 24.007(5)(B). Here, that writing, *i.e.* the document under which the obligation the Trustee seeks to avoid arose, was the Second Amendment. *Complaint* at ¶¶ 14, 20. This was executed and presumably delivered in February, 2014. *Complaint* at ¶ 14. That is within the four (4) year period and that should be the beginning and the end of the inquiry.

6.    It may be an interesting question as to whether the original instrument should control, or whether an amendment controls, for purposes of the date when an obligation is incurred. The statute is silent, and it gives no indication that there should be a relation back. It is the source of the obligation that matters. But the question is largely academic in this case,

because the Debtor never made a single rent payment under the original Lease, and only made rent payments under the Second Amendment (or subsequent amendments obviously within the four (4) year period).  *Complaint* at ¶ 20.  Moreover, the Lease expressly provides that:

> The Term of this Lease and <u>Tenant's obligation to make and any all payments</u> required under this Lease shall commence on the first day of the first month after the date that the Tenant commences operations of its business which is defined as being the soonest of (i) Tenant having its first patient at the Premises; or (ii) sixty (60) days after Substantial Completion of the Renovation Improvements by Landlord (also known herein as the "<u>Lease Commencement Date</u>").

Exhibit "A" at § 3(a) (emphasis added).

7.     The Trustee alleged that the Debtor commenced business operations on February 28, 2014.  *Complaint* at ¶ 15.  That, then, would be the Lease Commencement Date.  Indeed, the Landlord's evidence in its Proof of Claim, of which the Court can take judicial notice, expressly lists the "Lease Commencement Date" as "25-Feb-14."  *See* Claim No. 249 at Exhibit "D."  If the Court believes that the Trustee should expressly plead that the first patient at the premises was not prior to February 25, 2014, and that the substantial completion of the renovation improvements was not prior to February 25, 2014, then Trustee seeks leave to do so and will do so.  But there should be no question from the Landlord's own claim that the Lease Commencement Date did not occur until at least February 25, 2014.  As such, any "obligation" to make "any and all payments" under the original Lease never accrued prior to that date.  More importantly, this means that no obligation to pay rent under the original Lease ever accrued prior to the execution of the Second Amendment.

8.     Therefore, not only does the avoidable obligation arise in the Second Amendment, but the original Lease contained *no* rent obligation since the condition precedent to that obligation arising had not occurred prior to the Second Amendment.  There is no obligation to relate back to.  There is no obligation which was merely amended or changed.  There is simply

no obligation at all, since the express condition precedent was not satisfied at any time prior to limitations or at any time prior to the Second Amendment, and the Second Amendment fundamentally changed the condition precedent such that the original condition precedent not only was never satisfied, but never could be satisfied. Rather, it is a wholly new condition precedent and a wholly new obligation, all of which occurred with limitations.

9. The Second Amendment is therefore both the factual and the legal basis for the Debtor's liability for rent and, as such, it is the "writing" referenced in the statute. Simply put, the Debtor never paid a penny prior to the Second Amendment, and there was never any obligation to pay a penny prior to the Second Amendment, meaning that it is the Second Amendment that must control the "obligation" that the Trustee seeks to avoid. And, because the Second Amendment was both executed and delivered within the four (4) year period, there is no limitations issue, or repose issue, or any other timing issue.

10. The Second Amendment provides that:

> The Term of this Lease and <u>Tenant's obligation to make any and all payments</u> required under this Lease shall commence on the date Carter Validus Properties LLC, a Delaware limited liability company, or its assignee, purchases the Premises from Landlord pursuant to that certain Purchase Agreement . . .

Exhibit "B" at § 2(a) (emphasis added).

11. The Lease does not just say rent, or some payments, or some liabilities, but rather "any and all payments . . . under this Lease." The Trustee alleged that the date that the referenced purchase occurred was on February 28, 2014. *Complaint* at ¶ 15. Thus, the Debtor had no obligation to make any payments until February 28, 2014. That is when its obligation— the obligation sought to be avoided—first arose and that is what each subsequent payment was tied to, and that is within the four (4) year period. Indeed, if the Landlord had sued the Debtor for unpaid rent, it would not have sued under the original Lease as it would have found no right

to payment in the original Lease, the condition precedent never having been satisfied and then having been completely removed and replaced. Rather, the Landlord would have sued for a breach of the payment obligations contained in the Second Amendment.

12. In construing TUFTA, the Court can and should look for guidance from the Bankruptcy Code. *See, e.g., Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006). Moreover, while the analysis usually stops with the language of a statute, here the statute does not answer the precise question of what document controls the date that an obligation is incurred, when there is an amendment. Thus, resort to analogous case law is instructive. In this respect, an obligation is incurred for purposes of fraudulent transfer under the Bankruptcy Code "when a debtor becomes legally obligated to pay." *In re Galbreath*, 286 B.R. 185, 198 (Bankr. S.D. Ga. 2002). *See also Barash v. Public Fin. Corp.*, 658 F.2d 504, 510 (7th Cir. 1981) (construing "incurred" as "when a debtor first becomes legally bound to pay"). The Fifth Circuit has agreed that it is the time when liability attaches that is the date that the obligation is incurred for fraudulent transfer purposes (also holding that the question is a mixed question of fact and law). *See In re GWI PCS 1 Inc.*, 230 F.3d 788, 806-07 (5th Cir. 2000). Here, the Debtor became legally obligated to pay any rent only when Carter Validus Properties LLC or its designee acquired the Lease, which was on February 28, 2014.

13. Because the Trustee believes that there is no limitations issue, and if the Court agrees, then it is not necessary to consider whether equitable tolling or fraudulent concealment can apply. The Trustee will point out, however, that in filing an action under section 544 of the Bankruptcy Code, the Trustee is effectively standing in the shoes of a defrauded creditor. That the *Debtor* knew at all times of the Lease and the facts and circumstances surrounding the same does not matter. Rather, it is the knowledge of creditors that matters.

## IV.    PLEADING STANDARDS

14.    Using a Straw Man argument, the Landlord next seeks dismissal on pleading grounds, despite seven (7) pages of facts and allegations.  First, the Landlord suggests that "it is impossible to tell" whether the Trustee has asserted an actual fraudulent transfer claim.  This is wrong.  Nowhere does the Trustee reference actual fraudulent transfer or allege that the Lease was done to hinder, delay, or defraud a creditor.  On the contrary, the Trustee pleads: insolvency, the existence of a creditor, gross undercapitalization, debts beyond the Debtor's ability to pay, and "less than reasonably equivalent value." *Complaint* at ¶¶ 35-42.  These are the hallmarks of a constructive fraudulent transfer claim.  Should there be any doubt, the Trustee confirms that he is not asserting an actual fraudulent transfer claim, reserving the potential of doing so in the future.  Since the Trustee has not asserted an actual fraudulent transfer claim, all of the Landlord's arguments about pleading who said what to whom and when, and about hindering, delaying, or defrauding a creditor, are irrelevant.

15.    With respect to constructive fraudulent transfer, the Landlord repeats its argument that the Trustee has failed to plead sufficient facts.  The Trustee does not know what more facts and allegations he can plead.  He pled facts and allegations to satisfy every element of constructive fraudulent transfer, and he placed the Landlord on more than ample notice of what his claims are (we are approaching two centuries now since the Field Code).  He pled: insolvency and why the Debtor was insolvent (including gross undercapitalization); the existence of one or more creditors, who remain unpaid, including many that signed $50,000.00 "Surplus Cash Notes"; and he pled that the Debtor did not obtain reasonably equivalent value because the rent and other terms of the Lease were well above market value. *Complaint* at ¶¶ 8-30.  On the market value issue, the Trustee pled: that the rent was almost twice market, that the term was

almost twice market, and that various other terms, such as an obligation that all operating costs, be paid. *Complaint* at ¶ 19. And, the Trustee pled that the Landlord paid $99 million for the property based in large part on the stream of income from the inflated Lease, even though the property was assessed as having a much lower value and even though the Landlord itself carries the value of the property on its books at a much lower amount. *Complaint* at ¶¶ 23-28. These facts and allegations support the Trustee's claim. If the Landlord wishes to contest them, then that is what discovery and a trial are for.

16. Indeed, the Landlord characterizes the following as conclusory allegations: the rental rate was almost twice or more of comparable rental rates, the lease term is 10 or 15 years more than market, the Debtor was obligated for all operating costs, and the Debtor did not pay any rent to the Landlord's (insider) predecessor. Of course these are conclusory allegations! That is the point of a complaint. The Landlord confuses the Trustee *proving* his claim with the Trustee *pleading* his case. These are all factual allegations, and all that the Trustee need to do is to allege them. The notion that "[t]hese statements are conclusory at best and do not provide any factual support to show how the Debtor's rent was allegedly above market" is simply wrong. *Objection* at ¶ 15.

17. The Landlord alleges that the Trustee has failed to identify a creditor-in-being. The Trustee is not aware of a requirement that he identify such a creditor by name in a complaint. He pled that "there were many such creditors, having lent money to the Debtor on $50,000.00 'Surplus Cash Notes.'" *Complaint* at ¶ 18. If the Landlord would prefer for the Trustee to name these creditors—instead of the Landlord just looking up the Claims Registry—the Trustee would seek leave to so amend his Complaint.

18. The Landlord further alleges that the Trustee has failed to establish which payments made to the Landlord were fraudulent, how they were fraudulent, and when they were paid. *Objection* at ¶ 16. In fact, the Trustee alleged approximately $24 million in payments between February, 2014 and April, 2016. *See Complaint* at ¶ 30. And, the Trustee made clear that it would not be the whole of this amount to be recovered, but rather only the portion that exceeds reasonably equivalent value. *See Complaint* at ¶ 51. The Trustee does not know what that amount might be, except his general allegation that the rent was almost twice market, but that is what discovery and experts are for.

19. The Landlord alleges that the Trustee has failed to sufficiently plead why the originally lessor was an insider of the Debtor. The Trustee pled that the same person, Mr. Hourani, was a director, officer, or manager of both entities. *Complaint* at ¶ 11. That is enough for insider status. *See* 11 U.S.C. § 101(31)(B)&(E) (insider of an insider is an insider). The Trustee simply does not know the rest concerning the predecessor lessor at this time, but again, that is what discovery is for.

20. As far as the Landlord's "shotgun pleading" arguments go, the Trustee will rely on the Court to review his facts and allegations and make its own determination. The Trustee does find it odd, however, that the Landlord on the one hand argues that the Trustee has failed to plead sufficient facts while, on the other hand, the Landlord argues that the Trustee "sets forth an excessive number of facts." *Objection* at ¶ 18.

RESPECTFULLY SUBMITTED this 31st day of August, 2018.

        **MUNSCH HARDT KOPF & HARR, P.C.**

        By: /s/ Davor Rukavina
           Davor Rukavina, Esq.
           Texas Bar No. 24030781
           Thomas D. Berghman, Esq.
           Texas Bar No. 24082683
           Julian P. Vasek, Esq.
           Texas Bar No. 24070790
           Fareed Kaisani, Esq.
           Texas Bar No. 24104017
           500 N. Akard Street
           Dallas, Texas 75201-6659
           Telephone: (214) 855-7500
           Facsimile: (214) 855-7584

        **ATTORNEYS FOR THE TRUSTEE**

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that, on August 31, 2018, a true and correct copy of the foregoing document was electronically served by the Court's ECF system on parties entitled to notice thereof, including Rakhee Patel, Esq., counsel for record for HC-7502 Greenville Avenue, LLC, and via email on counsel of record for Capital One, N.A., Brian Sirower, Esq.

        By: /s/ Thomas Berghman
           Thomas D. Berghman, Esq.